CHRISTIAN, J.,
delivered the opinion of the court.
The decree of the District court at Abing-don, entered in the first named cause on the 23d day of July, *1867, not having been appealed from, must be taken as a final and conclusive adjudication of all the questions settled by that decree.
The following extract is taken from that decree: “The court is further of opinion that as the possession of this property (the King’s salt works) was obtained by the appellants, or those under whom they claim in the beginning of the year 1859, under a lease of previous date from Thomas U. Preston, to whom, with the approval of said court, the same had been rented by its commissioner for a term of years, which did not expire until the 1st day of January, 1861, the appellants, or those under whom they claim, did acquire a lawful possession of said property under the authority of said court; and although without any express authority from it, they have held over, still that it would defeat the purpose of said court, as indicated in its said decree, to tolerate any entrjr uf>on the said possession by any one of the part owners to the exclusion of the others, and that the interests of all make it necessary that the management assumed by the said court shall not be interfered with, but kept under its complete supervision and control.” * * * * *
“That the said Circuit court of Washington county .having by its decree assumed the management of said property, alone can determine whether to confine the lease for ten years made by Preston to Spencer, Akerman & Co., of whom the appellants claim to be legal successors; or to treat them as being in possession of the property under the terms of the lease to said Preston; or to hold them responsible for such other reasonable rent as said court may determine to be right; or it may determine that the interests of the several owners may be promoted by a new letting of the property on such terms as it may seem proper; *but these questions can only be properly determined by that court in some proceedings to which all the part owners are parties. It is therefore the opinion of this court that the injunction awarded in this cause, instead of being dissolved, should have been continued; that the appellants should have been required to amend their bill, by making all the owners of the King’s salt works parties thereto; and that the cause when heard should be heard with the before-mentioned suit of Mitchell & others v. McCall and others.”
Under this decree of the District court, and in accordance with its directions, the Circuit court of Wythe on the 3d day of May, 1870, entered a decree declaring that “the complainants be required to amend their bill by making all the owners of the King’s salt works parties thereto, and with a view of conforming to the requirements of said decree, that the cause when heard should be heard with the case of John D. Mitchell and others against A. McCall and others, depending in the Washington Circuit court, this cause is by consent of parties removed to the Circuit court of Washington county for the purpose aforesaid, without being remanded to rules.”
Afterwards, it appearing to the court that the plaintiffs in the injunction suit had in some mode adjusted the matter of rents of said salt works with the other owners, except the heirs of James White, an amended bill was filed making said heirs parties defendants; and this was accepted as a compliance with the order of the District court respecting new parties.
At the April term 1871 of the Circuit court of Washington, a decree was entered directing its commissioner “to take, settle and adjust an account, showing what would be a reasonable rent of King’s salt works, in the hands of the plaintiffs, due to defendants *or any of them, from the 1st day of January, 1861, to the 1st day of January, 1869, with interest thereon, and any payments, if any, made by Stuart, Buchanan & Co. to the defendants, or either of them, during said period, on account of rents of said salt works;” and the decree required the complainants “to produce before said commissioner any books, accounts and papers in their possession he may require, to enable him to ascertain a reasonable rent of the property during the said period.”
Under this decree the commissioner proceeded to take evidence, and gave notice to the plaintiffs to produce before him at his office at Abingdon, “all their books, papers and accounts, relating in any manner to the business of manufacturing salt at Salt-ville, during the period embraced in the order settling said account, and the proceeds of sales of the same during the same time, in order that a full and accurate account of the entire operations may be ascertained and fully set out.” After this notice had been served on the plaintiffs they filed their petition to the Circuit court of Washington county, setting out the above requirement of the commissioner, and complaining that the order of the court, with the action of *389 the commissioner tinder it, was calculated “to be productive of great wrong and injustice, and if proceeded in will occasion great expense and delay’ ’; that according to the requisition of the commissioner they would be subjected to the delay and expense of interminable accounts of very large transactions of many years, and that the time, labor and money wasted in taking these accounts could hardly be estimated. They conclude their petition by referring to the order of the court, and saying, according to this plan (of the commissioner) every shipment and sale of salt will have to be ^enquired into; testimony will have to be taken over most of the Southern states; an interminable scaling of money received and money paid out from month to month will be necessary. And to make such a plan still more difficult, it will be found that many of the heaviest salt transactions of your petitioners are still unsettled, and many are now the subjects of litigation in various parts of the country. ’ ’
This petition was received and considered by the Circuit court, and in a careful and clear written opinion, filed with the record, he proceeds to construe the legal effect and terms of the order of April term 1871; and to prescribe and limit the action of the commissioner under it. His Honor, Judge Kelly, after noticing at length the objections raised in the petition, says: ‘ ‘He (the commissioner) ought to confine his enquiries solely to what would be a reasonable rent of King’s salt works, in the hands of complainants, from the 1st January 1861 to the 1st January 1869, and to payments made by them, on account of rents, to defendants ; and not to an account of the entire operations of complainants in the manufacture of salt. If the commissioner deems it proper, in the first instance, to call upon complainants for the production of documents, he should restrict his call to such books, papers and accounts as pertain to the rental value of the King’s salt works, and to any payment of rents to defendants. The complainants will then, under oath, produce such, and such only, of their books, &c., as, in their judgment, are relevant to the enquiry and account required by the commissioner. Should the commissioner not be satisfied with this production, and, in his discretion, order a further production, he will designate what other documents are to be produced. If the defendants are advised that the documents *are not relevant, or that they are such as they are not bound to produce, they (at the risk of being regarded as in contempt, should the court decide that the books, &c., should be produced,) will decline to produce them, and upon the commissioner’s certificate of refusal the question will come before the court.” And it was thereupon ordered that Commissioner Leonidas Baugh do reform his requisition for the production of books, papers and accounts by the complainants, so as to require only the production of such as relate to or will aid him in ascertaining the rental value of the King’s salt works, from the 1st day of January 1861 to the 1st day of January 1869.”
These proceedings were held in vacation, and Commissioner Baugh afterwards made a report showing “his efforts to take the account ordered, and the failure of Stuart, Buchanan & Co. to produce before him the books, accounts and contracts required by him as necessary to enable him to take said account, and report such reasonable rent and payments, if any, thereon, as required. ”
At the April term 1872, the Circuit court after referring in its decree, to the proceedings in vacation above noticed, the instruction to commissioner Baugh, restricting his enquiries to ascertain what would be a fair rental value of the King’s salt works, and limiting his requisition for books, &c., to such only as may be necessary to aid him in reaching that enquiry; and after setting forth the decree of the Ilistrict court of appeals, which declared that the Circuit court of Washington county should determine either “to confirm the lease for ten years, made by Preston to Spencer, Akerman & Co., of whom Stuart, Buchanan & Co. claim to be the legal successors; or to treat them as being in possession of the property under the terms *of the lease to said Preston; or to hold them responsible for such other reasonable rent as said Circuit' court may determine to be right, ’ ’ entered the following decree: On consideration whereof, the court is of opinion and doth determine to ascertain what would be a reasonable rent under the circumstances for King’s salt works in the hands of the complainants due to the defendants from 1st January, 1861, to 1st January, 1869, and what payments, if any, have been made by said complainants to the said defendants on account of rents during said period, and to hold Stuart, Buchanan & Co. responsible to the said defendants for their shares of such reasonable rents of King’s salt works during said period when ascertained, subject to such payments, if any; and for this purpose the court doth review and enlarge the order of account heretofore made by decree in the first mentioned case, to be taken by commissioner Baugh, and to enable him to take it, said Stuart, Buchanan & Co. are ordered to produce before said commissioner on oath, when required by him, all contracts in their possession or power to produce, by which leases of said salt property were made by them, or privileges granted to others to manufacture salt during said period, and delivered to them by their sub-lessees, or those to whom such privileges were granted under such contract. * * * And said commissioner is required, from such evidence as the parties may produce before him, to ascertain and report a reasonable rent for said King’s saltworks, and of the shares of said defendants therein during said period, and report the same to the court with any matter specially stated deemed pertinent by himself or required by either of the parties to be stated.”
*390 It is from this decree that an appeal has been allowed to this court.
*The court is of opinion that there is no error in the decree complained of. It is in entire conformity with the decree of the District court of appeals at Abingdon, which not being appealed from, must be taken as a final adjudication of the questions stated by that decree. Under that decree the Circuit court of Washington was empowered and directed to hold the appellants responsible either for the amount of the lease made by Preston to Spencer, Akerman & Co., or the amount of the court’s lease to Preston, or for such other reasonable rent as said Circuit court may determine to be right. It was to ascertain what is a reasonable rent that the matter was referred to a commissioner for enquiry. It was a proper mode, and the best mode of ascertaining the rental value. Nor is the decree of the court subject to the objection that it is a decree for an account of the profits, and indicates a purpose to hold the appellants responsible for, and to give the appellees a share in the profits made during the period for which the salt works were held by the appellants. Ón the contrary, both the instructions given to the commissioner and the decree of the court expressly limit the enquiry to what would be a reasonable rent; and he is directed to call for the production of such books and papers and contracts of lease with subtenants, and such only as will enable the commissioner and the court to make a correct estimate of the fair rental value.
The decree appealed from directs the production by the appellants of all contracts in their possession or power to produce, by which leases of said salt property were made by them, or privileges granted to others to manufacture salt during said period, and all books and accounts and papers in their possession or power, showing the quantity of salt manufactured during *said period, and delivered to them by their sub-lessees, or those to whom such privileges were granted under such contract. ’ ’
There is nothing unreasonable or oppressive in this order, and it is difficult to perceive upon what reasonable grounds the appellants can object to it.- They knew when they took possession of the King’s salt works, under the lease of Preston to Spenser, Akerman & Co., that this property was under the supervision and control of the Circuit court of Washington county; and that the yearly rent had been fixed by the court for many years past. They had sub-let a large portion of the property to sub-tenants, and during the period indicated in the decree had received from them large rents in manufactured salt and otherwise for the privileges granted. Surely it was a legitimate enquiry, in order to arrive at a reasonable rent which the appellants should be required to pay, to ascertain what rent they received from their sub-lessees during the same period.
Nor is the objection well taken, so earnestly insisted upon by the learned counsel for the appellants, that under the issue made by the pleadings, in the suit of Stuart, Buchanan & Co. v. White & others, no account could be ordered by the court. That objection to the decree would have been potent and conclusive if the action of the court had been confined to that case; for the only issue made by the pleadings in that case was, whether the King’s heirs had a right to enter and use the property for themselves. But under the decree of the District court the Circuit court was directed to hear together with the suit of Stuart, Buchanan & Co. v. White, the suit of Mitchell v. McCall, after bringing before the court, by an amended bill, all the King’s heirs. In the last named case the Circuit *court of Washington had assumed, without objection, and with the approval and at the request of all the parties interested, the complete supervision and control of the property, renting it out, and distributing the rents among the parties entitled. It required therefore no issue in the pleadings in the suit of Stuart, Buchanan & Co. to enable the court to do that which for years it had done under full authority in the suit of Mitchell v. McCall, to wit: to ascertain the r-easonable rent for the King’s salt works, and distribute that rent so ascertained, among the parties entitled to receive it. Under proper proceedings in that suit Preston had leased the property for five years from the court’s commissioner. In 1859 he made a lease to Spenser, Akerman & Co., and the latter to Stuart, Buchanan & Co. Stuart, Buchanan & Co., took the place of Preston, whose lease expired in .January 1861; they held over without any authority of the court and without any new contract with the court. It was certainly the right of the King’s heirs to demand, and the duty of the court which had the supervision and control of the property to compel the payment of a reasonable rent. The proceedings complained of were taken simply for the purpose of enabling the court to ascertain and fix what amount would be a reasonable rent. It had authority to do this by the express terms of the decree of the District court, which not being appealed from, as airead}' observed, was final and conclusive. That decree, so far from limiting the enquiry of the Circuit court to the rent which had been received under the Preston lease, or to the amount for which Preston had leased the works to Spenser, Akerman & Co. as the only basis of fixing the rent to be paid by Stuart, Buchanan & Co., on the contrary left it to the Circuit court to ascertain *what, under all the circumstances, would be a reasonable rent for the property during the period when it was in their hands, from January 1861 to January 1869.
It must be remembered that during a large part of this period an extraordinary and unprecedented demand for . salt, combined with great scarcity of that article, of prim-est necessity, not only put up tho prices to *391 enormous figures, but taxed the fullest capacity- of these words to meet the pressing demand. A stupendous war and an effectual blockade, which hermetrically sealed almost every port on the southern coast, gave to the owners and lessees of the salt works of Southwestern Virginia almost an exclusive monopoly in the manufacture of salt. They not only supplied the people of this state, and of many of the southern states, but they had contracts with the government of the Confederate states, of the state of Virginia, of some of the southern states, and with many of the counties of this state. Motives of patriotism, as well as motives of gain, impelled them to work the property to its utmost capacity, if need be to utter exhaustion. They not only made such use of the property as was never made or could be made by previous lessees, but they had numerous sub-tenants, and others to whom they sold the privilege of making salt. It may well be, that lessees who hold the property under these circumstances should be held to a different measure of responsibility from those who preceded them; and surely it would be no error in the Circuit court to conclude that what would be a reasonable rent in times of peace, when the demand for salt was ordinary, and the prices usual, would not be a reasonable rent in times of war and blockade, when the demand was so extraordinary and the prices ranging *so high as to stimulate the lessees to work the property even to exhaustion. It is for the Circuit court, acting in conformity with the decree of the District court, to ascertain W'hat, under all the circumstances, would be a reasonable rent. The proceedings taken by the decree, appealed from, were intended to furnish the data upon which the court may act. If in carrying out that decree the commissioner should put the parties to needless expense and time in producing books and papers, and taking accounts irrelevant to the enquiry he was ordered to make, the plain remedy of the appellants is to apply to the Circuit court to control the commissioner within the proper limits of his enquiry. The judge of the Circuit court has already shown himself prompt to do this upon such application already made in this cause. We cannot see how the appellants have been aggrieved by any injury, actual or threatened, in the decree appealed from.
It will be time enough to appeal to this court when they are held to an unjust measure of responsibility, by being required to pay an unreasonable rent.
The court is therefore of opinion that there is no error in the decree of the Circuit court of Washington county, and that the same be affirmed.
Decree affirmed._